RECEIVED IN CLERK'S OFFICE SEP 04 2015 U.S. DISTRICT COURT MID. DIST. TENN.

United States District Court
Middle District Tennessee

) Craig Cunningham
) Plaintiff, Pro-se
)
)     v.                                    CIVIL ACTION NO. 3:15-929
)
) The Altitude Group, LLC DBA Core Home Security, Ryan Neill, Kevin Brody, Monitronics International Inc., 2 Gig Technology, UTC Fire and Security America's Corp Inc., Tran Consulting Group, LLC, John/Jane Doe 1-10
)     Defendants.

## Plaintiff's Amended Complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. The Altitude Group, LLC dba Core Home Security is an alarm system dealer that sells Monitronics services and Alarm Products from UTC Fire and Security America's Corp Inc. aka GE Security and 2 Gig Technology products. The Altitude Group, LLC is operating from 40 South East 5th Street, ste 500, Boca Raton, FL 33432 and can be served via registered agent NRAI Servces Inc., 1200 South Pine Island Road, Plantation, FL 33324.

3. Kevin Brody is the Vice president and head of sales and operations for Altitude Marketing Group and can be served at 40 SE 5th Street, ste 500, Boca Raton, FL 33432.

1

4. Ryan Neill is the President and Founder of Marketing Altitude Group and is also an officer of Tran Consulting Group, LLC which is the managing entity for the Altitude Group LLC. Ryan Neal Can be served at 40 SE 5th Street, ste 500, Boca Raton FL 33432.

5. The Tran Consulting Group, LLC is the managing entity for the Altitude Group, LLC, and both are directly liable for the illegal telemarketing calls placed to the Plaintiff. The Tran Consulting Group is operating from 40 SE 5th Street, ste 500, Boca Raton, FL 33432 and can be served via registered agent NRAI Services, Inc., 120 South Pine Island Road, Plantation, FL 33324.

6. UTC Fire and Security America's Corporation, Inc., is an alarm manufacturing company and can be served via registered agent: The corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

7. Monitronics International, Inc., is an alarm monitoring company whose services were offered by agents/employees of Core Home security via illegal telemarketing calls. Monitronics can be served via registered agent: The corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

8. 2 Gig technology is an alarm manufacturer that is makes alarm systems sold by Core home security and is operating from 2961 Maple Loop Dr., Lehi, UT 84043 and can be served via the Corporation Service Company, 2711 Centerville Rd. Ste 40, Wilmington, DE 19808.

2

## Jurisdiction

9. Jurisdiction of this court arises as the acts happened in this county

10. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here.

11. Personal jurisdiction is apparent as the Defendants regularly place calls their benefit or arrange for calls to be made on their behalf to Tennessee residents for the purpose of soliciting residents to buy their alarm monitoring services and alarm systems sold through Core home security. Additionally, Tennessee residents were hired as agents to conduct installation in Tennessee of the alarm systems.

## FACTUAL ALLEGATIONS

12. In 2015, the Plaintiff recieved multiple phone calls from a company called "Core Home security". This company spoofed their number on the caller ID and sought to hide their identity by giving the website of Monitronics as their own website. When the Plaintiff tried to call the number back, the phone number was always busy.

13. The calls had pre-recorded messages and were placed by an automated telephone dialing system as defined by the TCPA, 47 USC 227.

14. For example, in one call on August 10th 2015 to the Plaintiff's cell phone 615-212-9191, the call started with a pre-recorded message "*This is a call*

3

*from Core Home security. We are running a special promotion for a home security system in your area today. We are sorry, but all of our agents are helping other customers. If you want to hear more about this promotion, press 1 to speak with an agent"*

15. The call connected with an agent of Core home security and the agent asked if the Plaintiff had an alarm system before. The agent stated that he would install over $1,000 in General Electric home security equipment at no charge. He stated the equipment was the latest on the market and completely wireless and the Plaintiff could save up to 20% on his home insurance.

16. The agent went on to describe the system and went into the details on how the system uses a cell phone backup and a Lithium Ion battery backup in the event of power failure. He stated the monthly cost for the system was $42 per month and that Monitronics did the monitoring for Core home security and claimed that the company had an A+ rating with the better business bureau.

17. When asked about his company's website, he stated it was monitronics.com and stated that his company was an authorized dealer for Monitronics.com. He stated that his company was an authorized dealer and they promote monitronics and "*our product is their product*" and "*having their authroization and licensing, we refer our customers straight to their website*"

4

Case 3:15-cv-00929   Document 5   Filed 09/04/15   Page 4 of 10 PageID #: 26

18. The agent later gave the Plaintiff his phone number when the Plaintiff asked for a call back number for Core Home security.
19. In a second call with the agent, the agent stated *"Craig, I'm a welder by trade, and I never thought I'd be working in a call center annoying the hell out of people all day. This isn't something I enjoy doing. I actually hate this job. The one thing that makes feel a little bit better about doing it is that the security system itself does help people, so it's not like I'm selling some bull shit product, but nonetheless, I hate doing it because I know we call people over and over again and annoy people to death. Believe me man, I've got a family and home, I get those calls at my house, I even get them on my cell phone and I hate em."*
20. The agent also stated *"They use 2 Gig equipment too...I know that 90% of the installs we do is 2 Gig Equipment"* and further stated when asked about the Altitude Group *"Yeah, they go hand in hand with Core Security"*
21. The Plaintiff is not in need of a home alarm system. The Plaintiff did not solicit anyone to call his cell phone for assistance in obtaining a home alarm system. The Plaintiff is unsure how the Defendants obtained his cell phone number as he never gave it to them and never gave express or implied consent for the defendants to call his cell phone using an automated telephone dialing system.
22. These phone calls violated the TCPA in two ways, first by placing multiple automated telephone calls to the Plaintiff's cell phone in violation of 47 USC 227(b), and second by not conforming to the requirements of 47 USC

5

227(c)(5) and the FCC's rulemaking authority under 47 CFR 64.1200(d), which requires the defendants to have a written policy for maintaining a do-not-call list, failure to train agents and personnel engaged in telemarketing on the use of the do-not-call list, and the failure to identify the party placing the call or the entity for which the call is being placed. The Defendants are liable to the Plaintiff in the amount of $3,000 per call made, $1500 for violating 47 USC 227(b) and $1500 for violating 47 USC 227(c)(5).

23. The Plaintiff alleges direct liability for the listed corporations and the officers of the corporations. The agents on the phone seem to be well aware of the illegal telemarketing practices by the corporations and related entities. Additionally, the officers of the corporations have a direct role in the illegal conduct, authorizing it and ratifying the illegal telephone calls.

24. The officers of the corporation had direct, personal conduct in authorizing the telephone calls or oversaw and directed the telemarketing efforts for which their corporations benefitted. The officers set company policy and directed the marketing efforts of the respective companies.

### Vicarious Liability and Direct Liability

25. Defendant UTC, Monitronics, and 2 Gig Technology are no stranger to TCPA litigation and has regularly authorized and encouraged authorized agents to use their trademarks of "GE Security" and refer consumers to their website of Monitronics.com in their telemarketing efforts. Defendants UTC, Monitronics, and 2 Gig Technology are liable under the principles of

6

vicarious liability in addition to direct liability as they are a seller of goods and services as defined by the FCC. These defendants are currently getting sued in a similar case, Mey v Monitronics in multidistrict litigation for similar conduct: case # 1:13-MD-2493.

26. In making these calls, Core Home Security was essentially marketing the products manufactured by 2 Gig and UTC Fire as well as monitoring services offered by Monitronics through their dealer relationship with both companies. The 6th circuit as well as multiple other courts have ruled that there is direct liability to include for corporate actors such as executives like and vicarious liability for corporations that ultimately benefit or sell services/products illegally marketed by 3rd parties. The parties are also jointly and severally liable for the phone calls as well.

27. Similarly, the calls were placed with apparent authority, actual authority, and the ratification of Defendants 2 Gig Technology, Monitronics, and UTC, and the respective executives/officers of the corporation. As an authorized dealer for 2 Gig, Monitronics, and UTC, there is actual authority granted to Core Home security for which these entities should be held vicariously liable. These companies knew of the illegal conduct by multiple authorized dealers including Core home security and their improper telemarketing, and still refused to exercise control or authority over Defendant Core Home Security to reduce or eliminate the improper sales methods.

28. Defendants 2 Gig, UTC, and Monitronics ratified the conduct by celebrating the sales and rewarding Core home security with thousands of dollars in comissions and other benefits.

29. The Altitude Group, Ryan Neil, Kevin Brody, and Tran Consulting Group are all entities that are directly liable for the calls in question. Kevin Brody and Ryan Neil have direct participation and authorized the actions which led to the automated calls being placed to the Plaintiff. Both the Tran Consulting Group as a managing entity for The Altitude Group and the Altitude Group, LLC directly have liability for the illegal telephone calls placed to the Plaintiff.

30. The Altitude Group placed the calls directly to the Plaintiff's cell phone, which was in turn directed by the Tran Consulting Group, which is directed by Ryan Neil. The agent the Plaintiff spoke with also identified the Altitude Marketing Group as a related entity, which lists their services as "*Lead Generation, Live Transfers, and Web development*" according to the website www.marketingaltitudegroup.com and cite the industries of "*Home Security, Loan Modification, Auto Warranty, Life Alert, Health Insurance, and Student loans*" which are all industries plagued by incessant robocalls to consumers.

## CAUSES OF ACTION:

### COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

8

31. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

32. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by using an autoated telephone dialing system to place calls to the Plaintiff's cell phone. This entitles the Plaintiff to recover $1500 per call.

## CAUSES OF ACTION:

## COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

33. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

34. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by 47 USC 227(c)(5) by way of 47 CFR 64.1200(d) and failed to comply with the requirements to maintain and train employees on the use of a do-not-call list.

## PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B. Statutory damages of $3000 for each phone call.

9

C. Pre-judgment interest from the date of the phone calls

D. Costs of bringing this action; and

E. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted, August 28th 2015

Craig Cunningham Plaintiff, Pro-se, 615-348-1977

5543 Edmondson Pike, ste 248

Nashville, Tn 37211

10